**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LUCAS LAWTON, | ) | CASE NO. 1:25-CV-00720-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | **MEMORANDUM  OPINION  AND** |
| COMMISSIONER OF SOCIAL | ) | **ORDER** |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant, | ) | |

**I. Introduction**

Lucas Lawton ("Lawton" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 5). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On June 1, 2023, Lawton filed an application for DIB, alleging a disability onset date of May 31, 2023. (ECF No. 9, PageID #: 278). The application was denied initially and upon reconsideration, and Lawton requested a hearing before an administrative law judge ("ALJ"). (*Id.*).  On April 18, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (*See id.* at PageID #: 381-408).  On May 1, 2024 the ALJ issued a written decision finding Lawton was not disabled.  (*Id.* at PageID #: 278-87).  The

1

ALJ's decision became final on February 10, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 29-32).

On April 10, 2025, Lawton filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12). Lawton asserts the following assignments of error:

> (1) Whether the ALJ erred in the evaluation of Mr. Lawton's upper extremity limitations resulting in a residual functional capacity assessment that is not supported by substantial evidence.
>
> (2) Whether the ALJ erred when he failed to adequately evaluate and recognize the limiting impact of Mr. Lawton's hypersomnia and excessive daytime sleepiness.

(ECF No. 10 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Lawton's hearing:

> Claimant testified that he has a license and that he drives short distances. Claimant is right handed. Claimant confirmed that he graduated from high school. Claimant testified that he had surgeries in May, June and October 2023 on his left upper extremity, particularly his elbow. Claimant said that he is unable to work because he cannot get out of bed or walk because of arthritis in his joints. Claimant testified that he has problems with his hands and that it hurts to brush his teeth. Claimant said that he cannot type on a keyboard and that his ability to use his phone is limited because of cramping in his fingers and hands. Claimant said that he can cut a piece of meat with a knife. Claimant stated that he has problems sleeping and that he usually sleeps about three hours at night, then naps during the day. Claimant stated that on a typical day, he gets his daughter up and takes her to school. Claimant feeds the pets and does some housekeeping tasks before picking his daughter up from school. Claimant said that he has no hobbies or volunteer activities. Claimant testified that his fingers cramp up. Claimant said that he cannot reach overhead or even to the front with either arm.

(ECF No. 9, PageID #: 282).

**B. Relevant Medical Evidence**

The ALJ also summarized Lawton's health records and symptoms:

> Records from the office of primary care provider Heather Mielke, DO document claimant's visits there dating back to January 2021, when hypertension medication was prescribed. Claimant's body mass index (BMI) was over 30 (7F/1-4). Claimant saw specialist Babu Eapen, MD for obstructive sleep apnea and CPAP in July 2021 (2F/3-7; and 20F/2-5). Claimant followed up for hypertension and obesity with Dr. Mielke on September 1, 2022 (7F/5-9) and December 13, 2022. Claimant had been walking and trying to eat a health diet (7F/10-14). Claimant was evaluated on December 29, 2022 by orthopedist Mark Lembach, MD for left shoulder and elbow pain. Dr. Lembach administered injections (4F/2-4).

> Claimant complained to Dr. Lembach on January 17, 2023 that he now had pain in the right shoulder and elbow. Claimant deferred injections, as they had not helped on the other side (4F/5-7). On January 25, 2023, claimant received urgent care for asthmatic bronchitis (1F). On January 30, 2023, claimant was evaluated by orthopedist Mark Panigutti, MD for pain in both hands. Claimant also complained of pain in both knees. Dr. Panigutti's impression included arthritis of the bilateral thumbs and carpal tunnel, bilateral hands. Claimant was referred to rheumatology for his multiple joint pains (4F/8-12).

> Claimant underwent an initial evaluation on February 14, 2023 by rheumatologist Gheorghe P. Ignat, MD. X-rays of the cervical spine that day showed decreased normal cervical lordotic curvature. X-rays of the lumbar spine showed mild lumbar spondylosis. X-rays of the sacroiliac joints showed no evidence of arthritis (10F/8-10; and 20F/6-8, 24-39). Claimant followed up on February 28, 2023 with Dr. Ignat, who summarized that with negative rheumatoid factor and other laboratory results, claimant problems appeared to be related to osteoarthritis. Dr. Ignat prescribed Cymbalta (10F/5-7). On February 28, 2023, Dr. Lembach ordered physical therapy for right shoulder and elbow pain (4F/13-15; and 20F/9-11). Claimant followed up with sleep specialist Dr. Eapen on March 7, 2023 (2F/1-2; and 20F/12-13). On March 7, 2023, claimant underwent an initial occupational therapy evaluation for left shoulder and elbow pain. Claimant attended sessions on March 14 and 21 and April 4, 2023 (3F; and

4F/16-18).

April 18, 2023 MRI of the left shoulder showed ACL joint arthrosis and inflammation with mild impingement and supraspinatus and infraspinatus tendinitis. MRI of the left elbow showed degenerative changes and small joint effusion (4F/19-22). On April 25, 2023, Dr. Lembach endorsed proceeding with surgery on the left shoulder and carpal tunnel, as these bothered claimant the most. Claimant was thinking about having left elbow surgery while he was off work as a dairy manager at a market (4F/23-25). On May 31, 2023, Dr. Lembach performed left shoulder arthroscopic debridement, biceps tenodesis and carpal tunnel release surgery (4F/26- 28).

On June 15, 2023, claimant underwent an initial evaluation of his left elbow by orthopedic specialist Harry A. Hoyen, MD, who advised claimant to return for possible injections for osteoarthritis once his shoulder had healed (14F/19-21). On June 16, 2023 postsurgical follow up, Dr. Lembach ordered physical therapy (4F/29-31). Claimant underwent an initial physical therapy evaluation on June 19, 2023 (6F/26-29) and he attended a half dozen sessions through July 6, 2023 (6F/16-20).

Dr. Lembach's July 7, 2023 plan included continuing physical therapy and weaning off a left arm sling. Claimant wanted to address his right hand issues addressed during his recovery (4F/32-34). Claimant attended physical therapy sessions #7-9 from July 10-17, 2023 (6F/10-15).

On July 18, 2023, claimant was evaluated by neurologist Suresh Kumar, MD for headaches. Dr. Kumar's assessment included: headache; excessive daytime sleepiness; idiopathic hypersomnia; and blurry vision. Dr. Kumar ordered imaging (9F/1-4).

On July 19, 2023, Dr. Lembach performed right open carpal tunnel and index and middle finger trigger release surgery (4F/35-36). Claimant attended physical therapy sessions #10-11 on July 24 and 26, 2023 (6F/6-9). July 31, 2023 MRI and MRA of the brain showed no definite emergent large vessel occlusion, arterial dissection or aneurysm. Both cerebellar tonsils extended below the margin of the foramen magnum, compatible with benign cerebellar tonsillar ectopia. Paranasal sinus disease was shown, with probable reactive lymphoid hypertrophy (5F/1- 4, 20; 6F/4-5; and 9F/11-15).

Claimant attended physical therapy session #13 on August 3, 2023

4

(6F/2-3) and he had a routine visit with Dr. Mielke that day, as well (7F/15-16). Dr. Lembach administered a cortisone injection to the right trigger finger on August 10, 2023. Claimant was advised to take a two week break from physical therapy, but to continue home stretches to avoid frozen shoulder (4F/37-39). On August 25, 2023, Dr. Kumar noted that claimant was doing well on Cymbalta (9F/5-10). Claimant followed up with Dr. Hoyen on August 17, 2023 with continued left elbow pain (14F/17-18). August 31, 2023 CT scans of the left elbow showed moderate osteoarthritis with a few intra-articular bodies (14F/25-27). Dr. Ignat refilled Cymbalta and Gabapentin on September 8, 2023 (20F/14-17, 40-42). Claimant told Dr. Hoyen on September 14, 2023 that his left elbow was a little improved, though the pain still interfered with his functioning (14F/16-17). Claimant followed up with Dr. Lembach on September 21, 2023 (13F). Claimant presented as a new patient on September 27, 2023 to an NP specialist for evaluation of his thyroid and given a diagnosis of Hashimoto's disease (12F).

Dr. Lembach administered injections to both knees on October 6, 2023 (13F/5). On October 11, 2023, Michael Bassett, MD performed manipulation of the left elbow under anesthesia (14F/5-16; and 15F/1-7). Antibiotics were prescribed for signs of possible infection. Mary Grace Lenehan, PA removed claimant's sutures on October 26, 2023 (18F5-6). Claimant followed up with the thyroid specialist on October 30, 2023 (16F) and with Dr. Eapen on October 31, 2023 (20F/18-19). Claimant underwent an occupational therapy evaluation on December 8, 2023 for left elbow arthritis (19F/4-6).

Claimant had a visit on January 30, 2024 with Dr. Mielke for sinusitis, wheezing and hypertension (17F). Claimant was discharged from occupational therapy on January 31, 2024 as progress had plateaued and was limited due to pain levels (19F/1-3). Claimant told Dr. Hoyen on February 29, 2024 that he could only lift 5-10 pounds (22F/12-14). Claimant followed up with Dr. Ignat on March 1, 2024 (20F/20-23) and with Dr. Lembach on March 5, 2024 (21F). On March 21, 2024, Dr. Mielke ordered cardiac stress testing. March 26, 2024 EKG showed normal sinus rhythm (23F).

(ECF No. 9, PageID #: 282-84).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2028.

2. Claimant has not engaged in substantial gainful activity since May 31, 2023, the alleged onset date (20 CFR 404.1571 et seq.).

3. Claimant has the following severe impairments: arthritis; carpal tunnel syndrome; and left shoulder rotator cuff arthropathy (20 CFR 404.1520(c)).

4. Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he: can lift, carry, push and pull 10 pounds occasionally and lesser weight frequently; in an eight hour work day, can sit for six hours, stand for two hours and walk for two hours; cannot push or pull with the left upper extremity; can occasionally reach overhead with either upper extremity and frequently in all other directions; can frequently handle, finger and feel with either upper extremity; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally kneel, crouch and crawl; and can never work at unprotected heights or near dangerous moving machinery.

6. Claimant is unable to perform any past relevant work (20 CFR 404.1565).

    …

10. Considering claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569 and 404.1569a).

11. Claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2023 through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 9, PageID #: 280-82, 285-87).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant

work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Lawton raises two issues on appeal.  First, he argues the ALJ "erred in the evaluation of [his] upper extremity limitations resulting in a residual functional capacity assessment that is not supported by substantial evidence." (ECF No. 10 at 1).  Second, he argues the ALJ "erred when he failed to adequately evaluate and recognize the limiting impact of Mr. Lawton's hypersomnia and excessive daytime sleepiness." (*Id.*).

### 1. Consideration of Upper Extremity Limitations in RFC

Plaintiff first argues that when crafting the RFC, "the ALJ erroneously interpreted raw medical data on his own and failed to accurately evaluate and articulate all of the relevant evidence regarding Plaintiff's limited ability to use his upper extremities" such that the ALJ "erred in finding that pushing and pulling was restricted only with the left, not the right upper extremity; that Mr. Lawton could frequently reach in all other directions except for overhead; and could frequently handle, finger, and feel with either upper extremity." (ECF No. 10 at 11). Plaintiff asserts that the ALJ rejected the opinions of both the State agency consultants and

Plaintiff's providers and instead "relied on a recitation of select portions of the evidence with a very limited analysis" to support the RFC. (*Id.* at 12 (internal citation omitted)). Plaintiff's position is that because "the ALJ considered only selective portions of the record, did not address the objective evidence as a whole, and reached a determination regarding Plaintiff's upper extremity limitations that is not supported by substantial evidence, reversal or remand is warranted." (*Id.* at 15).

The Commissioner responds that substantial evidence supports the ALJ's decision, and the record does not support additional limitations. (ECF No. 12 at 7). The Commissioner argues the ALJ did not selectively cite evidence because he "repeatedly acknowledged Plaintiff's reports of pain in his arms, hands, and shoulders" and "referenced diagnostic images showing objective problems and discussed Plaintiff's various surgeries." (*Id.* at 8). The Commissioner's position is that "given both evidence that supported Plaintiff's allegations and evidence that detracted from them, the ALJ reasonably crafted a restrictive RFC finding for sedentary work … subject to additional limitations" and "it cannot be said that the ALJ's RFC finding was unreasonable or outside the 'zone of choice.'" (*Id.* at 9).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 98-6p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support

his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted).  A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

After reviewing the ALJ's decision, the Court finds Plaintiff's argument persuasive.  In his decision, the ALJ noted Claimant's testimony that he had "problems with his hands and that it hurts to brush his teeth," "he cannot type on a keyboard and … his ability to use his phone is limited because of cramping in his fingers and hands," and "he cannot reach overhead or even to the front with either arm."  (ECF No. 9, PageID #: 282).  The ALJ indicated he found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id.*).  However, beyond this boilerplate language, the ALJ wholly failed to provide *any* explanation as to why the evidence in the record supported discounting Plaintiff's symptom allegations or why it justified the limitations—and only the limitations—included in the RFC.  (*See id.* at PageID #: 282-85).  The ALJ explained that "updated surgical and other treatment documentation" supported restricting Plaintiff to sedentary work rather than light as opined by the State agency consultants but provided no explanation as to why he found Plaintiff retained the ability to occasionally reach overhead and frequently in all other directions, and frequently handle, finger, and feel with both upper extremities.  (*See id.*).  Further, the ALJ's summary of the medical records does not include any references or findings that clearly contradict Plaintiff's allegations or support the ALJ's RFC.  (*Id.*).

10

Defendant argues that "the record contains findings on physical examination that bolster the ALJ's RFC finding," including that "at times Plaintiff has exhibited normal range of motion of the wrists, hands, and fingers and normal strength" and "[a]t a March 2024 examination, Plaintiff displayed near full passive range of motion, but had pain with shoulder elevation, which is consistent with the ALJ's finding that Plaintiff could only occasionally reach overhead but could frequently reach in other directions." (ECF No. 12 at 8-9). The problem, however, is that the ALJ did not mention or cite these specific findings at any point in his decision, let alone as justification for discounting Plaintiff's allegations or as supportive of the RFC. (*See* ECF No. 9, PageID #: 282-84). Thus, the mere presence of these normal findings in the record—without any indication that the ALJ relied on them in reaching his decision—is insufficient to uphold the decision. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018) ("An agency's actions must be upheld, if at all, on the basis articulated the agency itself, and not based on appellate counsel's post hoc rationalizations." ) (citation modified). While the Commissioner is certainly correct that the ALJ need not specifically discuss each record if his findings show that he considered the entire record in reaching his decision, the issue here is not whether substantial evidence *could* support the ALJ's decision but rather whether the ALJ sufficiently *explained* his rationale in reaching his decision. Because the ALJ wholly failed to explain why the medical records discussed supported his ultimate RFC finding and rejection of Plaintiff's testimony, he failed to build an accurate and logical bridge between the evidence and the result. *See Russell v. Comm'r of Soc. Sec. Admin.*, No. 1:23-cv-01748-DAC, 2024 WL 3638702, at *19 (N.D. Ohio Aug. 2, 2024) (nothing that while an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record," the ALJ must still "provide sufficient explanation

11

for the claimant and any reviewing court to trace the path of her reasoning and explain with specificity how the evidence supports the RFC limitations") (citation modified) (quoting *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 WL 9064960, at *10, (N.D. Ohio Dec. 14, 2023) (citations omitted), *report & recommendation adopted*, 2024 WL 37877 (N.D. Ohio Jan. 3, 2024)).  Accordingly, remand is required.  *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015) (finding remand necessary where "neither the ALJ's boilerplate credibility finding nor her discussion of the evidence ma[de] clear her reasons for discrediting [claimant's] testimony" because such prevented the court from determining whether the RFC was supported by substantial evidence).

### 2.  Additional Argument

Plaintiff next argues the ALJ erred when he "did not evaluate or impose any work related restrictions as a result of Mr. Lawton's idiopathic hypersomnia and excessive daytime sleepiness" because he concluded they had not interfered with Plaintiff's work-related functioning more than minimally for 12 months or longer.  (ECF No. 10 at 15-16).  However, because the Court has already found remand necessary as explained above, the Court need not address this argument.  Rather, on remand, the ALJ should consider all relevant evidence in evaluating Plaintiff's disability claims in accordance with all applicable regulations.

## VI. Conclusion

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: November 21, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE